[Cite as *State v. Randolph*, 2019-Ohio-307.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-15 |
| | : | |
| v. | : | Trial Court Case Nos. 2018-CRB-62 & |
| | : | 2018-TRD-120 |
| BRAD RANDOLPH | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 1st day of February, 2019.

. . . . . . . . . . .

ROGER A. STEFFAN, Atty. Reg. No. 0086330, 205 South Main Street, Urbana, Ohio
43078
    Attorney for Plaintiff-Appellee

JAMES S. SWEENEY, Atty. Reg. No. 0086402, 97 South Liberty Street, Powell, Ohio
43065
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After a vehicle collision, Brad Randolph was charged with two counts of driving under suspension, in violation of R.C. 4510.11(A), and one count of failure to stop at a stop sign, in violation of R.C. 4511.43(A). He was also charged with obstructing official business, in violation of R.C. 2921.31(A), based on his statements to a law enforcement officer that his fiancée, not he, was the driver of the vehicle. A jury found Randolph guilty of all charges, and the trial court sentenced him accordingly.[1]

{¶ 2} Randolph appeals from his convictions, claiming that the trial court erred in allowing opinion testimony by a firefighter/emergency medical technician (EMT). For the following reasons, the trial court's judgment will be affirmed.

## I. Evidence at Trial

{¶ 3} On Christmas 2017, Cherie Wagner was driving her Kia Sedona minivan northeast on State Route 4 when she observed a small white car stopped at a stop sign ahead and to her left at the intersection with State Route 54; State Route 4 did not have stop sign at that intersection. After oncoming (southwest) traffic on State Route 4 passed the intersection, the car drove into the intersection in front of Wagner. Wagner swerved and slammed on her brakes, but collided with the passenger side of the car. Wagner observed a man in the driver's seat and a female passenger.

{¶ 4} After checking on her children in her van, Wagner checked on the occupants

---

[1] For obstructing official business, the trial court imposed 60 days in jail, of which 55 days were suspended, 24 months of community control, a $300 fine, and court costs; Randolph's driving privileges were suspended for one year. For both driving under suspension counts, the trial court imposed a $125 fine and a one-year driver's license suspension. For the stop sign violation, the trial court imposed a $35 fine. Randolph was ordered to pay restitution of $1,000; this amount was included in the "total all cases" stated on the judgment entry for obstructing official business.

of the car. Wagner heard a woman crying. Wagner saw that the car's driver's door was open, and the woman was sitting sideways in the driver's seat with her feet out the door, holding her head. Wagner returned to her vehicle to be with her children. Wagner initially received some insurance information from a deputy who came to the scene, but it was "bond insurance" related to the female occupant of the car, and the insurance company told Wagner later that the woman was not covered if she were not the driver. Wagner stated that Randolph did not have insurance, and her insurance therefore paid for repairs, minus her deductible; Wagner stated that she would not have had to pay her deductible if the woman, who had insurance, had been the driver.

{¶ 5} Stephen Pollock observed the collision as he was traveling northbound on State Route 54 and approaching the stop sign at State Route 4. Pollock stated that the car involved in the collision was facing him, traveling southbound on State Route 54. Pollock saw the car pull out in front of the minivan and the minivan swerve and hit the car on the passenger's side. The car passed Pollock's vehicle after the collision, before stopping. As it went past, Pollock saw a woman in the passenger seat, crying and holding her head; a man was driving. Pollock got out and checked on the minivan's passengers. When he went to the car, EMTs were already there.

{¶ 6} Captain Andrew Goings, a firefighter/EMT with the Pleasant Township Fire Department for ten years, was travelling in his personal vehicle on State Route 4, approximately four miles south of the collision, when he was notified by radio of the traffic incident. Goings went to the scene and noticed two vehicles pulled over on State Route 54, southeast of the intersection with State Route 4; the vehicles appeared to have been involved in a "T-bone" accident.

**{¶ 7}** Goings spoke with Wagner, who reported no injuries. Goings then went to the car; he observed Randolph sitting in the driver's seat with his feet on the pavement, and a woman, later identified as Christin McKenzie, seated in the back seat on the driver's side. Randolph reported no injuries, but McKenzie was visibly shaken, complained of head and neck pain, and had a laceration to the back of her head on the right side. Goings noticed glass fragments on the right side of her body. (Goings indicated that the front passenger window was broken, but the driver's side windows were intact.)

**{¶ 8}** When asked if he came to any conclusions about the injuries sustained by the occupants of the car, Goings testified, over defense counsel's objection, that he "stated to the female that you were, you know, the passenger of the vehicle, given that it is because she did have the head injury on the right side." (Tr. at 41.) Goings further testified that McKenzie "was the only one that had any type of injuries that matched up to her being the passenger in the vehicle. I would've seen those same injuries in another person if that person would've been in the passenger's seat versus the driver's seat." (Tr. at 42-43.) When the medic unit arrived, Goings told the crew about the injuries that McKenzie had sustained and that he believed she had been the passenger when the impact had occurred. McKenzie was placed on a stretcher and taken by ambulance to the hospital. Randolph rode to the hospital with McKenzie.

**{¶ 9}** Deputy Erich Hopkins of the Champaign County Sheriff's Office, whose duties include accident reconstruction, was called to the scene and was the last deputy to arrive. Hopkins spoke with Goings and learned that both Randolph and McKenzie were in the car and that Randolph was claiming to be the passenger, but that McKenzie's injuries were consistent with her being the passenger. Hopkins then spoke with another

deputy, who was taking witness statements from Wagner and Pollock.

{¶ 10} Hopkins spoke with Randolph; Randolph told Hopkins that he was the passenger and informed the officer that his driver's license was under suspension. Hopkins informed Randolph of what Goings had said and advised Randolph that he would be charged with obstruction if Hopkins learned that Randolph was lying. Randolph maintained that he was the passenger, not the driver. Hopkins created a traffic crash report, which was admitted at trial.

{¶ 11} The defense offered the testimony of Machele Rupert (Randolph's mother) and Mathew Severt (Randolph's close friend). Their testimony established that, on Christmas Day 2017, McKenzie drove herself, Severt, and Randolph to Rupert's home in Mechanicsburg. Randolph wanted to borrow a gas can from Rupert to take to someone whose car was out of gas. Severt stayed at Rupert's home when Randolph and McKenzie left with the gas can; McKenzie was driving. Within an hour, Rupert received a phone call from Randolph indicating that Randolph and McKenzie had been in an automobile accident. Severt believed McKenzie must have been driving, because McKenzie always drove and Randolph did not drive. Severt and Rupert went to the accident scene, where they observed that McKenzie was injured, and then went to the hospital. At the hospital, Rupert noticed that Randolph's right hand was injured.

{¶ 12} Randolph testified on his own behalf. He indicated that McKenzie was driving when they left his mother's home and when the collision occurred. Randolph stated that the passenger-side doors would not open after the accident, so he exited the car through the driver's door. McKenzie then sat in the driver's-side back seat, and he sat in the driver's seat. Randolph stated that he noticed that he was injured as he was

going to the hospital with McKenzie. He indicated that his right hand and forearm started to throb and his hand was swollen; he also noticed little pieces of glass in cuts on his right hand. Randolph testified that he had a knot on the left side of his head from his head's colliding with McKenzie's head.

{¶ 13} McKenzie also testified on Randolph's behalf, stating that she was driving when the accident occurred. She indicated that she had been injured when her head bounced off the driver's side window and then hit Randolph's head; glass flew in her head when the passenger window broke.

{¶ 14} After deliberations, the jury found Randolph guilty of both counts of driving under suspension, of failure to stop at a stop sign, and of obstructing official business. Randolph appeals from his convictions, raising one assignment of error.

## II. Opinion Testimony

{¶ 15} In his sole assignment of error, Randolph claims that the trial court "abused its discretion when it permitted Firefighter Goings to render opinion testimony."

{¶ 16} Evid.R. 701 governs opinion testimony by lay witnesses and provides that such testimony "is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under Evid.R. 701, lay opinion testimony must be "rationally based on the perception of the witness. Perception connotes sense: visual, auditory, olfactory, etc. Thus, opinion testimony under Evid.R. 701 must be based on firsthand, sensory based knowledge." *Sec. Natl. Bank & Trust Co. v. Reynolds*, 2d Dist. Greene No. 2007 CA 66, 2008-Ohio-4145, ¶ 17.

{¶ 17} "The line between expert testimony under Evid.R. 702 and lay opinion

testimony under Evid.R. 701 is not always easy to draw."  *Hetzer-Young v. Elano Corp.*, 2016-Ohio-3356, 66 N.E.3d 234, ¶ 43 (2d Dist.), citing *Reynolds* at ¶ 19.   However, as recognized by the Supreme Court of Ohio, courts have permitted lay witnesses to express their opinions in areas in which it ordinarily would be expected that an expert must be qualified under Evid.R. 702.   *Id.*, citing *State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001); *see also State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 107 (2d Dist.).   "Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue.   These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience."   (Footnote omitted.)   *McKee* at 296-297; *see also Jones* at ¶ 111 (police detective could testify about typical behavior of children in child abuse cases based on his training and experience in such cases); *Hetzer-Young* at ¶ 46 (witnesses could testify about power level of engine and whether plane was landing prior to crash); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 77.

{¶ 18} The trial court has "considerable discretion in admitting the opinion testimony of lay witnesses." (Citation omitted.)   *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 43 (2d Dist.).   An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} In this case, Captain Goings had been an EMT/firefighter with the Pleasant

Township Fire Department for ten years, and his duties included responding to automobile accidents. On cross-examination, Goings indicated that he worked in law enforcement, as well, and had been called to "hundreds of accidents," although he could not say how many of those involved T-bone collisions. Goings observed McKenzie's physical condition and injuries, as well as the condition of her car, after the collision. Goings's testimony that McKenzie's injuries were consistent with her being the passenger was rationally based on his first-hand observations and his personal experience responding to numerous automobile accidents as an EMT/firefighter and law enforcement officer. Further, Goings's testimony aided the trier of fact in determining whether Randolph, rather than McKenzie, was the driver of the vehicle, i.e., the disputed issue at trial. Accordingly, the trial court did not abuse its discretion in allowing Goings to testify that McKenzie's injuries were consistent with her being the passenger, not the driver.

{¶ 20} Randolph's assignment of error is overruled.

### III. Conclusion

{¶ 21} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Roger A. Steffan
James S. Sweeney
Hon. Gil S. Weithman