[Cite as *State v. Sanchez*, 2020-Ohio-5576.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0097** |
| JUAN SANCHEZ, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00537.

Judgment: Affirmed.

*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, Ohio 44047-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, Ohio 44240 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}   Appellant, Juan Sanchez, Jr. ("Mr. Sanchez"), appeals his convictions for rape, gross sexual imposition, and five counts of illegal use of a minor in nudity-oriented material following a jury trial in the Ashtabula County Court of Common Pleas, in a case involving a female victim who was six years old at the time of the alleged offenses.

{¶2}   Mr. Sanchez asserts five assignments of error, asserting that (1) his rape conviction was not supported by sufficient evidence; (2) his convictions are against the

manifest weight of the evidence; (3) the trial court erred by denying his request for the appointment of new trial counsel because of the existence of a conflict of interest; (4) the trial court erred by permitting the admission of opinion testimony; and (5) the trial court erred by failing to merge all of the gross sexual imposition offenses with the rape offense and the five counts of illegal use of a minor in nudity-oriented material with each other.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) Mr. Sanchez's rape conviction is supported by sufficient evidence. The trial testimony, if believed, establishes "sexual conduct" rather than "sexual contact."

{¶5} (2) Mr. Sanchez's convictions are not against the manifest weight of the evidence. The absence of evidence regarding whether the victim experienced pain during the event does not weigh heavily against Mr. Sanchez's rape conviction. Further, Mr. Sanchez's alleged right handedness and the police's evidence collection techniques do not support inferences against Mr. Sanchez's other convictions.

{¶6} (3) Mr. Sanchez has not established that his trial counsel had an actual conflict of interest as a result of her prior representation of one of the state's witnesses in an unrelated matter.

{¶7} (4) The trial court did not abuse its discretion under Evid.R. 701 by permitting a sheriff's lieutenant to opine that the hands he saw in photos found in a cell phone had the same characteristics or appearance as those of Mr. Sanchez. Even if the trial court had abused its discretion, the admission of the lieutenant's lay opinion testimony was nonprejudicial.

{¶8} (5) Mr. Sanchez's second count of gross sexual imposition does not merge into the rape count and his five counts of illegal use of a minor in nudity-oriented material do not merge with each other because all counts involved separate conduct.

{¶9} Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

## Substantive and Procedural History

{¶10} At the time of the alleged offenses, the victim, A.C., was six years old and lived with her mother, F.D., in Geneva, Ohio. F.D. worked as a subcontractor for a company that made water heater components. Under her arrangement, parts were delivered to her home to assemble. F.D.'s mother, L.K., was a full-time employee for the same company and assisted F.D. by picking up the parts at the company plant, delivering them to F.D. to assemble, and returning the assembled products.

### *Alleged Offenses*

{¶11} On August 22, 2017, F.D. was responsible for assembling a number of parts that L.K. was scheduled to return to the plant the following morning. Mr. Sanchez, whom F.D. had known for a few weeks, agreed to help her complete the project.

{¶12} Mr. Sanchez worked as a server at a Geneva restaurant. On the evening of August 22, he worked until approximately 9 p.m., went to F.D.'s home where F.D. and A.C. were present, and assisted F.D. in assembling parts.

{¶13} A.C. played in the living room until approximately 11:30 p.m., when F.D. put her to bed. A.C. was wearing a nightgown and dark-colored bathing suit bottoms.

{¶14} Mr. Sanchez and F.D. assembled parts until approximately 4 a.m., when they took a break. F.D. relaxed on the couch and dozed off. F.D. recalled Mr. Sanchez

3

going down the hallway to use the bathroom. She woke up at approximately 6 a.m., and she and Mr. Sanchez assembled the remaining parts before L.K. arrived to pick them up at approximately 8 a.m.

{¶15} Mr. Sanchez left the home at approximately 10 a.m. Shortly thereafter, A.C. woke up and told F.D. that Mr. Sanchez had come into her bedroom during the night and taken pictures of and touched her "front private."

{¶16} Based upon A.C.'s statements, F.D. dropped A.C. off at her grandmother's house. F.D. texted Mr. Sanchez, asking if he wanted to go shopping, the purpose of which was to obtain and search his phone. When he agreed, she picked him up and drove toward Cleveland.

{¶17} F.D. drove until her cell phone battery lost power, turned around, and drove back toward Geneva. She stopped at a gas station in Mentor and asked Mr. Sanchez to borrow his cell phone. Mr. Sanchez gave her his phone, and, upon F.D.'s request, went into the gas station to buy her some gum.

{¶18} F.D. looked through the pictures on Mr. Sanchez's phone and found a hidden photo album. She opened it and saw a picture of nude female genitals and a hand. F.D. recognized A.C.'s bathing suit bottoms and comforter in the photo.

### Investigation

{¶19} F.D. drove away from the gas station, leaving Mr. Sanchez behind, returned to Geneva, and contacted the Ashtabula County Sheriff's Department. She met with Deputy Jason Francis ("Deputy Francis") and showed him the photograph she found on Mr. Sanchez's phone. Deputy Francis collected Mr. Sanchez's phone and A.C.'s bathing suit bottoms and nightgown.

4

{¶20} F.D. took A.C. to a children's hospital in Cleveland. Kathleen Hackett ("Ms. Hackett"), the coordinator of the hospital's pediatric sexual assault nurse examiner program, interviewed A.C., conducted a physical examination, and collected samples for a sexual assault kit.

{¶21} During the interview, A.C. told Ms. Hackett that Mr. Sanchez entered her bedroom and stood beside her bed; took his cell phone from his pocket; moved her bathing suit bottoms to the side; took pictures of her "nana," meaning her "private part"; and "swished" his finger in her "nana." She pretended to be asleep. When she opened her eyes, Mr. Sanchez told her it was a nightmare. She was too scared to say anything to Mr. Sanchez.

{¶22} During the physical examination, Ms. Hackett observed a red linear mark or abrasion on the left side of A.C.'s hymen, which would be caused by some type of blunt force.

{¶23} Detective Brian Cumberledge and Lieutenant Terry Moisio ("Lt. Moisio") searched Mr. Sanchez's cell phone pursuant to a search warrant. In a hidden photo gallery, they found six photos taken on August 23 from 4:07 a.m. to 4:12 a.m. depicting a young female wearing dark-colored bathing suit bottoms. In two of the photos, the bathing suit bottoms were moved to the side, and two fingers of an olive-toned person are spreading open the vaginal and anal areas.

{¶24} Detective George Taylor Cleveland performed a Cellebrite examination of the phone, which extracts digital information and transfers it into a readable report format. In addition, Lt. Moisio interviewed Mr. Sanchez, at which time he obtained a DNA sample and photographed Mr. Sanchez's hands.

5

{¶25} Forensic scientists at the Ohio Bureau of Criminal Investigation ("BCI") tested and analyzed the physical evidence. A.C.'s bathing suit bottoms tested positive for amylase, which is a component found in bodily fluids and is more concentrated in saliva.

{¶26} Male DNA was detected on interior and exterior portions of the bathing suit bottoms. The amount of DNA on the interior portion was insufficient for comparison purposes. With respect to the exterior portion, Mr. Sanchez could not be eliminated as a contributor. Only one in 700 unrelated males would satisfy the characteristics of the detected male DNA.

### Indictment

{¶27} The Ashtabula County Grand Jury indicted Mr. Sanchez on 17 felony counts: three counts of rape, first-degree felonies, in violation of R.C. 2907.02(A)(1)(b) and R.C. 2971.03(B)(1)(b) (counts 1 through 3); two counts of gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05(A)(4) and (C)(2) (counts 4 and 5); six counts of pandering obscenity involving a minor, second-degree felonies, in violation of R.C. 2907.321(A)(1) (counts 6 through 11); and six counts of illegal use of a minor in nudity-oriented material or performance, second-degree felonies, in violation of R.C. 2907.323(A)(1) (counts 12 through 17). Mr. Sanchez pleaded not guilty to the charges.

### Jury Trial

{¶28} The matter proceeded to a jury trial over four days.

{¶29} The state presented testimony from A.C.'s mother (F.D.); her grandmother, (L.K.); a neighbor who lived across the street from F.D. and observed Mr. Sanchez's truck parked at the residence on the date of the alleged incident; law enforcement personnel

6

who investigated the matter; the owner and a co-worker of the restaurant where Mr. Sanchez worked; BCI scientists who tested and analyzed the physical evidence; and A.C. The state also presented photographs, documents, and the physical evidence.

{¶30} Over the defense's objection, Lt. Moisio testified regarding his comparison of the photos he took of Mr. Sanchez's hands with the photos obtained from the cell phone. According to Lt. Moisio, the hands appeared to have the same characteristics.

{¶31} At the close of the state's evidence, the defense made a Crim.R. 29 motion for acquittal. In response, the state agreed to dismiss two of the three counts of rape (counts 2 and 3), one of the six counts of pandering obscenity involving a minor (count 6), and one of the six counts of illegal use of a minor in nudity-oriented material (count 12).

{¶32} The defense admitted three exhibits and rested. Following deliberations, the jury found Mr. Sanchez guilty of the 13 remaining counts (counts 1, 4, and 5; 7 through 11; and 13 through 17).

### Sentencing

{¶33} At the sentencing hearing, the trial court merged one of the two gross sexual imposition counts (count 4) with the remaining rape count (count 1).

{¶34} The trial court also merged the five counts of pandering obscenity involving a minor (counts 7 through 11) with the five counts of illegal use of a minor in nudity-oriented material (counts 13 through 17).

{¶35} The court imposed prison sentences of 15 years to life on the rape count (count 1), five years on the remaining gross sexual imposition count (count 5), and eight years each on the five counts of illegal use of a minor in nudity-oriented material (counts

13 through 17), all to be served consecutively, for an aggregate prison sentence of 60 years to life.

{¶36} Mr. Sanchez appealed and sets forth the following five assignments of error for our review:

{¶37} "[1.] The jury's finding that appellant had committed the crime of rape was not supported by sufficient evidence.

{¶38} "[2.] Appellant[']s convictions are against the manifest weight of the evidence.

{¶39} "[3.] The trial court erred and abused his [sic] discretion by refusing to appoint new trial counsel for appellant.

{¶40} "[4.] The trial court erred and abused its discretion by permitting a witness to identify fingers shown in a photograph to be appellant's, despite the fact that this witness was not qualified as an expert in that regard.

{¶41} "[5.] The trial court erred, as a matter of law, by failing to merge all of the gross sexual imposition counts with the rape count and all of the remaining counts with one another."

## Sufficiency of the Evidence

{¶42} In his first assignment of error, Mr. Sanchez contends that his rape conviction was not supported by sufficient evidence. Specifically, Mr. Sanchez argues that there was no competent and credible evidence demonstrating "penetration."

### Standard of Review

{¶43} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally

8

sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

{¶44} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at 259-60.

### *Sexual Conduct*

{¶45} Mr. Sanchez was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which provides, in relevant part, that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies: * * * The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶46} The term "sexual conduct" includes "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another." R.C. 2907.01(A). By contrast, the term "sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

9

{¶47} Many of our sister districts have concluded that insertion of an object inside a female's vulva or labia, without penetration into the vaginal cavity itself, constitutes "sexual conduct" to establish rape. *See State v. Melendez*, 9th Dist. Lorain No. 08CA009477, 2009-Ohio-4425, ¶9-13 (collecting cases). For instance, the Ninth District has held that "insertion, however slight, of a part of the body or other object within the vulva or labia is sufficient to prove vaginal penetration for purposes of proving sexual conduct as defined in R.C. 2907.01(A) and rape in violation of R.C. 2907.02." *Id.* at ¶14.

{¶48} Mr. Sanchez argues that A.C.'s testimony indicates that he "'swished' what appears to have been her labia," which establishes "mere contact." Further, there is no indication that the mark discovered on "the outside of the victim's labia" showed penetration.

{¶49} These characterizations are not consistent with the actual trial testimony. A.C. testified that Mr. Sanchez "wiggled" his finger "*inside*" her "front private." (Emphasis added.) This was consistent with Ms. Hackett's testimony that A.C. told her that Mr. Sanchez "swished" his finger "*in* my nana." (Emphasis added.)

{¶50} Ms. Hackett further testified that she observed a red linear mark or abrasion on A.C.'s hymen, which she described as "a muscle" that is "the entry of * * * the vaginal opening." According to Ms. Hackett, the abrasion would have been caused by "some type of blunt force" and was consistent with an injury caused by a finger or fingernail.

{¶51} Thus, this testimony, if believed, establishes digital insertion within the vulva or labia and, thus, "sexual conduct," rather than "sexual contact" involving the touching of the outside of the labia.

{¶52} Mr. Sanchez's first assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶53} In his second assignment of error, Mr. Sanchez contends that his convictions are against the manifest weight of the evidence.

*Standard of Review*

{¶54} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶25, citing *Thompkins* at 386-87. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.*

{¶55} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶56} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Martin* at 175.

### Rape Conviction

{¶57}  Mr. Sanchez argues that his rape conviction is against the manifest weight of the evidence because it would have been painful for A.C.'s "labia" to have been touched, and A.C. reported no such pain to Ms. Hackett.

{¶58}  Ms. Hackett actually testified that due to A.C.'s youth and lack of physical maturity, the hymen would not have been stretchy or pliable and would have been painful to the touch.  Although A.C. did not describe experiencing pain, she may not have known to tell Ms. Hackett about it.  Ms. Hackett indicated that she did not ask A.C. what her body felt when the event occurred; she only asked about pain in the context of conducting the assessment.  Further, Ms. Hackett acknowledged that pain is subjective, and she has no idea what A.C. felt at the time the event occurred or her level of sensitivity.

{¶59}  Thus, the absence of evidence regarding whether A.C. experienced pain during the event does not weigh heavily against Mr. Sanchez's rape conviction.

### Other Convictions

{¶60}  Mr. Sanchez further argues that his "other convictions" are against the manifest weight of the evidence.

{¶61}  Due to merger, Mr. Sanchez's "other convictions" consist of gross sexual imposition in violation of R.C. 2907.05(A)(4) and five counts of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(1).  *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶12 (noting that a conviction requires both a guilty verdict and a sentence).

12

{¶62} Mr. Sanchez contends that because he is right-handed and because the photos on the cell phone depict someone's right hand, it would have been "very difficult" for him to have taken them.

{¶63} While Lt. Moisio testified that he observed Mr. Sanchez sign a consent form with his right hand, there was no evidence presented regarding whether Mr. Sanchez was right or left hand dominant or ambidextrous.

{¶64} Further, even if Mr. Sanchez is right hand dominant, it does not compel a conclusion that he would necessarily use his dominant hand to operate his phone's camera rather than to engage in sexual misconduct. And the fact that something may be "very difficult" does not mean it did not occur, especially in light of the other evidence supporting a strong inference that Mr. Sanchez did take the photos.

{¶65} Mr. Sanchez also contends that the DNA evidence is inconclusive. According to Mr. Sanchez, since A.C.'s bathing suit bottoms had been co-mingled when taken into evidence, the "possibility of transference is undeniable."

{¶66} Deputy Francis testified that the bathing suit bottoms were placed in the same brown paper bag as the nightgown. However, a BCI forensic scientist testified that she did not observe any stains on the nightgown, so she did not perform any tests on it. Thus, the evidence does not support an inference that the nightgown transferred DNA to the bathing suit bottoms.

{¶67} Mr. Sanchez's second assignment of error is without merit.

### Conflict of Interest

{¶68} In his third assignment of error, Mr. Sanchez challenges the trial court's denial of his pro se motion to remove and replace one of his two appointed trial counsel.

13

Mr. Sanchez contends that one of his trial counsel had a conflict of interest because she previously represented A.C.'s mother, F.D., in another matter.

### Standard of Review

{¶69} "Where there is a right to counsel, the Sixth Amendment to the United States Constitution also guarantees that representation will be free from conflicts of interest." (Citation omitted.) *State v. Dillon*, 74 Ohio St.3d 166, 167 (1995). To establish a Sixth Amendment violation due to a conflict of interest, a defendant "must demonstrate that an *actual conflict* of interest *adversely affected* his lawyer's performance." (Emphasis sic.) *State v. Getsy*, 84 Ohio St.3d 180, 187 (1998), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

{¶70} "[A]n *actual* conflict exists if, 'during the course of the representation, the defendants' interests *do* diverge with respect to a material fact or legal issue or to a course of action.'" (Emphasis sic.) *State v. Gillard*, 78 Ohio St.3d 548, 553 (1997), quoting *Cuyler* at 356. To establish an actual conflict, a defendant must show two elements. *Id*. First, he must demonstrate some plausible alternative defense strategy or tactic might have been pursued. (Citations omitted.) *Id*. Second, he must demonstrate the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. (Citations omitted.) *Id*. Whether an actual conflict of interest existed is a mixed question of law and fact, subject to de novo review on appeal. *Id*. at 552.

### Analysis

{¶71} F.D. was the state's first witness at trial. One of Mr. Sanchez's trial counsel previously represented F.D. in a driving under suspension matter in another court.

14

However, there is no indication that she was representing F.D. at the time of trial. Thus, Mr. Sanchez has not established that his trial counsel had a loyalty or interest toward F.D.

{¶72} In addition, Mr. Sanchez's defense counsel questioned F.D. regarding the accuracy of her timeline of events and pointed out inconsistencies between her testimony and earlier statements to police. Mr. Sanchez has failed to address how trial counsel's earlier representation of F.D. in a wholly unrelated case affected this trial strategy. *See State v. Peoples*, 10th Dist. Franklin No. 02-AP-945, 2003-Ohio-4680, ¶41.

{¶73} Accordingly, the trial court did not err in overruling Mr. Sanchez's motion.

{¶74} Mr. Sanchez's third assignment is without merit.

**Lay Opinion Testimony**

{¶75} In his fourth assignment of error, Mr. Sanchez asserts the trial court abused its discretion by permitting Lt. Moisio's opinion testimony that the fingers shown in the cell phone photos are those of Mr. Sanchez.

***Standard of Review***

{¶76} There is no dispute that Lt. Moiso's opinion was offered as a lay witness rather than an expert witness. The admission of opinion testimony by a lay witness is governed by Evid.R. 701. We review a trial court's decision whether to admit evidence under Evid.R. 701 for an abuse of discretion. *See Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113 (1989). An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶77} When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error (although

15

harmless errors and errors not preserved for appellate review are not reversible). *Id.* at ¶67, fn. 2. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶67.

### *Evid.R. 701*

{¶78} Evid.R. 701 provides as follows:

{¶79} "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶80} The Supreme Court of Ohio has explained the admissibility of lay opinion testimony as follows:

{¶81} "At common law, lay witnesses were required to testify to facts rather than opinions. However, the practical possibility of distinguishing between fact and opinion proved to be elusive, if not impossible to draw, and led to extensive litigation and pervasive criticism by commentators. * * * Consequently, former Fed.Evid.R. 701, upon which Ohio Evid.R. 701 is based, was adopted, and it 'obviated the common law requirement for rigid compartmentalization of lay witness testimony into fact or opinion.' * * *

{¶82} "Although at first Evid.R. 701 contemplated testimony about such ordinary things as the color, speed, type of vehicle, identity of a person, a person's health, age, or appearance, or even testimony regarding a person's sanity or intoxication under controlled situations, * * * as case law developed, the rule was interpreted to allow for

16

"'shorthand renditions" of a total situation, or [for] statements of collective facts.' * * * Although the line between fact and opinion began to blur, all these situations met the core requirements—that the opinion is rationally based upon personal knowledge and is helpful to the trier of fact. * * *

{¶83} "Moving further from this core of 'shorthand statements,' courts began to permit witnesses with firsthand knowledge to offer lay opinion testimony 'where they have a reasonable basis—grounded either in experience or specialized knowledge—for arriving at the opinion expressed.' * * * Before this type of opinion testimony has been allowed, however, the trial court has made an initial determination that the witness possessed sufficient experience or specialized knowledge, thus satisfying the rule's requirements that the opinion be both 'helpful to a clear understanding * * * of a fact in issue' and 'rationally based' upon the witness's perception. * * *

{¶84} "It is consistent with this emerging view of Evid.R. 701 that courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. * * * Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, * * * but rather are based upon a layperson's personal knowledge and experience." (Citations and footnote omitted.) *State v. McKee*, 91 Ohio St.3d 292, 296-97 (2001).

17

{¶85}  According to the drafters of Evid.R. 701, a "non-expert witness testifying as to physical condition" is "[a] prime example" of "testimony which is a compound of fact and opinion" that is permitted under Evid. R. 701.  1980 Staff Note to Evid.R. 701.  "The witness is permitted to testify in the form of a conclusion because the primary facts gained from observation and upon which the conclusion is based are too numerous to detail."  *Id*.

{¶86}  And according to one commentator, "[t]he rule reflects the modern trend which treats the opinion rule as a rule of preference as to the form of trial testimony, rather than a rule of exclusion:  testimony as to primary sensory perceptions is preferred to inferences or conclusions drawn from those perceptions."  2 Giannelli, *Baldwin's Ohio Practice, Evidence*, Evid. Rule 701 (3d. Ed.).

### *Analysis*

{¶87}  Lt. Moisio testified regarding the photos obtained from the cell phone and identified them.  He also testified that he took multiple photos of Mr. Sanchez's hands within days of the alleged offenses, and these photos were admitted into evidence.

{¶88}  The state asked him whether he made any comparisons between the two sets of photos based on his "lengthy training and experience as a law enforcement officer."  Defense counsel objected, and the trial court held a bench conference in chambers.  Upon hearing from both sides, the trial court overruled defense counsel's objection, stating, "He was asked did he make a comparison.  He's testifying as to what he's done.  The ultimate conclusion is for the Jury to make."

{¶89}  Following the bench conference, Lt. Moisio testified that the hands in both sets of photos appear to have the "same characteristics," i.e., being "well-manicured,

18

clean fingernails" and having certain characteristics on the thumb and other parts of the hand. Thus, he opined that they appeared to be the same hands.

{¶90} We conclude that the trial court did not abuse its discretion in permitting Lt. Moisio's lay opinion testimony.

{¶91} First, Lt. Moisio's opinion testimony was rationally based on his perceptions. During his investigation, Lt. Moisio personally observed Mr. Sanchez's hands and documented them by taking photos. He also personally viewed the photos discovered on the cell phone. Thus, Lt. Moisio's lay opinion involved comparing the physical appearance and characteristics of the hands depicted in both sets of photographs.

{¶92} Second, Mt. Moisio's opinion was helpful to a determination of facts in issue. Mr. Sanchez's trial strategy appeared to be to cast doubt as to whether the cell phone that F.D. gave to the police was actually his and/or whether he took the photos discovered on it. The jury was not given any opportunity to personally observe Mr. Sanchez's hands, and obviously not a few days after the alleged offenses. Further, Lt. Moisio testified that he was in his thirty-fourth year in law enforcement, many of which included investigating child sex crimes. Thus, Lt. Moisio's opinion testimony was helpful to assist the jury in the determination of disputed issues of fact.

{¶93} Permitting Lt. Moiso, a trained and experienced detective, to opine that the hands he saw in the photos found in the cell phone had the same characteristics or appearance as the hands he personally observed and documented by photographing them fits well within the intent of Evid.R. 701 as explained by Supreme Court of Ohio in *McKee*.

19

{¶94} Further, since the Supreme Court of Ohio has determined that a police officer is permitted to give an opinion about his examination and photograph of a defendant's shoe as compared to shoe prints taken from the crime scene, *see State v. Jells*, 53 Ohio St.3d 22, 28 (1990), then it follows that the trial court did not abuse its discretion in admitting Lt. Moisio's lay opinion testimony regarding the hands in the cell phone photos.

{¶95} Although Lt. Moiso conceded during cross-examination that he was not an expert in making identifications of hands, this issue relates to the weight of his lay opinion rather than its admissibility. *See Giannelli, supra* ("[O]pposing counsel can expose through cross-examination the weaknesses in opinion testimony").

### Harmless Error

{¶96} Even if we determined that the trial court abused its discretion in admitting Lt. Moisio's lay opinion testimony, any error was harmless.

{¶97} Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The term "substantial rights" requires that the error must have been "prejudicial." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶23.

{¶98} In the underlying case, it is undisputed that there were only three people in the home when the acts occurred -- Mr. Sanchez, A.C., and F.D. A.C. testified that Mr. Sanchez was the perpetrator, not her mother, and it is highly unlikely that she would confuse the two. Moreover, the photos of A.C. were discovered on a cell phone recovered close in time to the offenses, and the phone contained personal information and photos relating to Mr. Sanchez. Further, the jurors were able to compare the photos of Mr.

20

Sanchez's hands with the cell phone photos and were free to draw their own conclusions. Therefore, the admission of Lt. Moisio's lay opinion testimony was nonprejudicial.

{¶99} Mr. Sanchez's fourth assignment of error is without merit.

**Merger**

{¶100} In his fifth and final assignment of error, Mr. Sanchez argues the trial court erred by not merging all counts of gross sexual imposition with the rape count and by not merging all five counts of illegal use of a minor in nudity-oriented material with each other.

{¶101} We review de novo a trial court's determination regarding merger. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶1.

### *R.C. 2941.25*

{¶102} "The constitution prohibition against double jeopardy generally protects a criminal defendant from successive prosecutions and multiple punishments for the same crime. *State v. Cook*, 11th Dist. Geauga No. 2016-G-0096, 2018-Ohio-788, ¶ 8, quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, * * * ¶ 7." *State v. Smith*, 11th Dist. Portage No. 2017-P-0053, 2018-Ohio-5183, ¶20.

{¶103} In furtherance of this constitutional principle, R.C. 2941.25 provides as follows:

{¶104} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶105} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or

information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶106} "In its most-recent extended analysis of R.C. 2941.25, the Supreme Court of Ohio held:

{¶107} "'1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors – the conduct, the animus, and the import.

{¶108} "'2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶109} "'3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.' *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, * * * paragraphs one, two, and three of the syllabus.

{¶110} "The *Ruff* court summarized its holding in the following manner:

{¶111} "'As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? And (3) Were they committed with separate animus or motivation? An affirmative answer to

22

*any* of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.'  *Id.* at ¶ 31.  (Emphasis added.)"  *Smith* at ¶¶23-28.

### Gross Sexual Imposition/Rape

{¶112} Mr. Sanchez contends that all counts of gross sexual imposition should have merged with the rape count because (1) there was only one alleged victim; (2) there was no evidence indicating anything other than "one touching"; (3) and there was no showing that the gross sexual imposition offenses resulted in a different harm than the rape offense.

{¶113} Mr. Sanchez's contention conflicts with the record.  The first count of gross sexual imposition (count 4) related to Mr. Sanchez's "sexual contact" with the victim's vagina.  The rape count (count 1) related to Mr. Sanchez's "sexual conduct," i.e., digital penetration of the victim's vagina.  The record reflects that the trial court *did* merge this count of gross sexual imposition with the rape count.

{¶114} By contrast, the second count of gross sexual imposition (count 5) related to Mr. Sanchez's "sexual contact" with the victim's anal area.  Because this count of gross sexual imposition involved separate conduct, it does not merge with the other count of gross sexual imposition or with the rape count.  *See State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶33 (convictions for rape and gross sexual imposition did not merge as allied offenses where, even though "offenses all occurred close in time to one another, each offense involved different conduct").

### Illegal Use of a Minor in Nudity-Oriented Material

{¶115} Mr. Sanchez also contends that all five counts of illegal use of a minor in nudity-oriented material (counts 13 through 17) should have merged with each other

23

because all five photos were taken within a very short time-frame during the same incident involving the same victim and harm.

{¶116} The Seventh District rejected this argument in *State v. Stoffer*, 7th Dist. Columbiana No. 09-CO-1, 2011-Ohio-5133. According to the court, the record revealed "three distinct acts of illegal use of a minor in nudity-oriented material or performance." *Id.* at ¶186. "While they may have been taken within seconds of each other, all three pictures were taken separately and at distinctly different times." *Id.* "Therefore, each offense charged constitutes a separate offense of illegal use of a minor in nudity-oriented material or performance, and the crimes do not constitute allied offenses of similar import which must be merged for conviction." *Id.*

{¶117} We agree with the Seventh District's analysis and conclusion. Accordingly, we find that the five counts of illegal use of a minor in nudity-oriented material do not merge for purposes of sentencing.

{¶118} Mr. Sanchez's fifth assignment is without merit.

{¶119} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

24

_____

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

{¶120} I concur with the majority's outcome but write separately because I disagree with its analysis regarding Sanchez's fourth assigned error.

{¶121} Sanchez asserts the trial court abused its discretion in allowing opinion testimony that the hands and fingers in the cell phone photographs appear to be Sanchez's. I agree.

{¶122} Moisio testified he took multiple photographs of Sanchez's hands. After those photographs were admitted into evidence, Moisio testified that he compared the known photographs to the photographs from Sanchez's cell phone, and over objection that Moisio lacked the requisite training, experience, education, or specialized knowledge, he opined that the cell phone photographs appear to depict Sanchez's hands and fingers.

{¶123} Moisio was asked the following on direct examination:

{¶124} "Q. Lieutenant, in reviewing the photographs of Mr. Sanchez' hands and fingers that you took that are shown in Exhibit A, as well as the photos that were obtained from the cell phone, have you been able to make any comparisons to both of those, based on your lengthy training and experience as a law enforcement officer?

{¶125} "[DEFENSE OBJECTION:] Your Honor, we object based on the fact that there has not been sufficient foundation laid that this Detective has the experience, training or specialized knowledge to make those kind of comparisons regarding anatomy."

{¶126} The trial court overruled the objection after a sidebar discussion, and Moisio's direct testimony continued:

{¶127} "Q. What comparisons have you been able to make?

25

{¶128} "A. The -- it appears the same characteristics with the hands that are in the photo with the young child, the photos of Mr. Sanchez' left and right hands, those characteristics being -- appear to be well-manicured, clean fingernails. Certain other characteristics of his hands, on the thumb, other parts of his hands there were certain characteristics that appeared to me to be the same hands in the photos with the child and the photos I obtained of both hands of Mr. Sanchez.

{¶129} "Q. You stand here today, sir, as not being an expert?

{¶130} "A. I am not an expert --

{¶131} "Q. Okay.

{¶132} "A. -- on that. No, I'm not.

{¶133} "Q. But you're making that comparison based on what?

{¶134} "A. Based on my observations. Based on what can be clearly seen in those photographs with the child and the photographs that I obtained of Mr. Sanchez' hands."

{¶135} The admission of this testimony is governed by Evid.R. 701, which provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶136} Through the years, the scope of Evid.R. 701 has been expanded to such an extent that it has become difficult to distinguish between permissible lay opinion under Evid.R. 701 and expert opinion under Evid.R. 702. *State v. Randolph,* 2d Dist. Champaign No. 2018-CA-15, 2019-Ohio-307, ¶ 17. "It is consistent with this emerging view of Evid.R. 701 that courts have permitted lay witnesses to express their opinion in areas in which it

26

would ordinarily be expected that an expert must be qualified under Evid.R. 702. * * * Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observation and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702*, but rather are based upon a layperson's personal knowledge and experience.*" (Emphasis added.) (Footnote omitted). *State v. McKee*, 91 Ohio St.3d 292, 296-297, 744 N.E.2d 737 (2001).

{¶137} This application of Evid.R. 701 allows officers or detectives to give lay opinion testimony when the testimony is predicated upon experience, specialized knowledge, or training. *State v. Maust*, 8th Dist. Cuyahoga No. 103182, 2016-Ohio-3171, ¶ 19; *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 107 (2d Dist.) (police detective could testify about typical behavior of children in child abuse cases based on his training and experience in such cases); *State v. Johnson*, 7th Dist. Jefferson No. 13JE5, 2014-Ohio- 1226, ¶ 57 (detective's testimony as to gang activity was permissible under Evid.R. 701 based on detective's personal knowledge and experience in the field).

{¶138} Here, the state failed to lay any foundation that Moisio had training, personal experience, or specialized knowledge in hand or finger identification. His comparison was limited solely to the photographs he took of Sanchez's hands and the five photographs from the cell phone. Both sets of photographs were admitted for the jurors' review. Thus, the jurors were in the same position as Moisio to draw comparisons and conclusions about these photos.

{¶139} Moreover, expert testimony is not admissible when it concerns a subject

27

that lies within the ken of an average juror. *State v. Stargell*, 2016-Ohio-5653, 70 N.E.3d 1126, ¶ 51 (2d Dist.). Once this line is crossed, error occurs.

{¶140} Because Moisio was in no better position to make the comparison than an average juror, his lay opinion that the hands in the cell phone pictures appear to be those of Sanchez was not helpful and was inadmissible. Evid.R. 701(2). Thus, the court erred. Nevertheless, under the totality of the evidence, admission was harmless.

{¶141} There were only three people in the home when the acts occurred, appellant, the victim's mother, and the victim. The victim testified that appellant was the perpetrator not her mother, and it is highly unlikely that she would confuse the two. Moreover, incriminatory photographs were on appellant's cell phone and recovered close in time. And the jurors had the photographs of appellant's hands and his cell phone photographs for comparison and were free to draw their own conclusions. Last, the lieutenant could not have lessened the impact of his testimony any more than he did by acknowledging that he is not an expert and in no better position than the jurors on the ultimate conclusion. The identification opinion testimony was therefore nonprejudicial.