The STATE of Ohio, Appellee,

v.

MARSHALL, Appellant.

[Cite as *State v. Marshall,* 191 Ohio App.3d 444, 2010-Ohio-5160.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23729.

Decided Oct. 22, 2010.

Amy B. Musto, Assistant City Prosecuting Attorney, for appellee.

Steve T. Pierson, for appellant.

———

FROELICH, Judge.

{¶ 1} Rhonda G. Marshall appeals from a judgment of the Dayton Municipal Court, which, after a trial to the court, found her guilty of domestic violence and assault; she was sentenced accordingly. For the following reasons, the judgment of the trial court will be affirmed.

I

{¶ 2} Chrystal Braun's testimony at her competency hearing and at trial established the following facts:

{¶ 3} Braun is the adult daughter of Marshall. After a difficult divorce three years prior to the events at issue in this appeal, Braun was diagnosed with bipolar disorder, posttraumatic stress disorder, and depression, and she attempted to commit suicide. As a result, the probate court appointed Marshall as Braun's guardian, and Braun lived with Marshall and her husband, Braun's step-

father. Braun did not work, but she regularly attended Castle, a social and support program for adults with mental-health conditions.

{¶ 4} According to Braun, on Saturday, June 21, 2008, she and Marshall argued because Marshall was attempting to curtail Braun's cigarette smoking. During this argument, Marshall grabbed Braun by the arm and struck her in the face several times. As a result, Braun had bruises on her arm, cheek, and eye. Braun claimed that she was not allowed to leave the house or use the phone for several days thereafter, and she was not allowed to attend Castle on Monday. On Tuesday, Braun went to Castle; when she was questioned about her injuries, she claimed that she had a seizure over the weekend. On Wednesday, with the support of a friend, Braun told someone at Castle that her mother had hit her. The police were notified and began an investigation.

{¶ 5} According to Marshall and her husband, who testified that he was present during the incident, Marshall had not hit Braun; rather, Braun had a seizure on Sunday, June 22, during which they had tried to restrain her for her own protection. They claimed that her injuries were a result of the seizure.

{¶ 6} On June 26, 2008, Marshall was charged with domestic violence and assault. She pleaded not guilty. Shortly thereafter, the probate court appointed a different guardian for Braun. In November 2008, Marshall filed a motion for suggestion of witness incompetence, requesting that the court interview Braun and "declare her incompetent to testify." The court held a hearing on the motion and found Braun competent to testify. On August 28, 2009, a bench trial was held. Braun and two police officers testified for the state; Marshall, her husband, and a friend of Marshall's testified for the defense.

{¶ 7} The trial court found Marshall guilty of domestic violence and assault. It credited Braun's testimony about the incident and found that the testimony of Marshall and her husband was inconsistent with the physical evidence. The trial court sentenced Marshall to 30 days in jail on each count, to be served concurrently, and the 30 days were suspended. The trial court also imposed community-control sanctions for one year and a $150 fine and ordered Marshall to attend anger-management classes.

{¶ 8} Marshall raises two assignments of error on appeal.

II

{¶ 9} Marshall's first assignment of error states:

{¶ 10} "The trial court erred and abused its discretion in ruling that Chrystal Braun, a thirty-three (33) year old woman suffering from several mental disorders and whom [sic] was recently adjudicated incompetent in probate court, [was] competent to testify when neither the court nor the state asked or

ascertained whether Braun understood right from wrong, whether it is wrong to lie and the consequences of lying under oath."

{¶ 11} Marshall contends that the trial court erred in permitting Braun to testify at trial. She asserts that Braun's mental-health conditions rendered her incompetent to testify at trial or that, at the very least, the trial court erred in finding that the state had met its burden of showing that she was competent to testify.

{¶ 12} The trial court's determination of a witness's competence to testify will not be reversed on appeal unless the court has abused its discretion. *State v. Clark* (1994), 71 Ohio St.3d 466, 469, 644 N.E.2d 331.

{¶ 13} The criteria by which a trial court must determine whether a witness is competent to testify as a witness are substantially different from the criteria by which a court may decide to appoint a guardian due to one's incompetence. For purposes of establishing a guardianship, a person is "incompetent" if he or she "is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide." R.C. 2111.01(D). For the purpose of testifying in court, "[e]very person is competent to be a witness except * * * [t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). Witnesses over the age of ten are presumed to be competent unless proven otherwise. *State v. Johnson*, Montgomery App. No. 20624, 2005-Ohio-1367, 2005 WL 678922, ¶ 13.

{¶ 14} Although there will be some situations in which the evidence in support of these determinations overlaps, we can envision many circumstances in which evidence in support of one finding will have little, if any, bearing on the other. For this reason, we disagree with Marshall's assertion that the probate court's finding, three years earlier, that Braun was incompetent created a "rebuttable presumption" that she was not competent to testify as a witness.[1] A witness of unsound mind is not automatically incompetent to testify. *State v. Bradley* (1989), 42 Ohio St.3d 136, 140, 538 N.E.2d 373. Even persons of unsound mind are competent to testify if they are able to correctly state matters that have come within their perception and are able to appreciate and understand

---

1. Braun testified at the competency hearing that she was found incompetent in the probate court, but the probate court's specific findings are not contained in the record of this case.

the nature and obligation of the oath to be truthful. Id. at 140–141, quoting *State v. Wildman* (1945), 145 Ohio St. 379, 31 O.O. 5, 61 N.E.2d 790, paragraph three of the syllabus. See also *In re J.M.*, Montgomery App No. 22836, 2009-Ohio-3950, 2009 WL 2436837, ¶ 24; *Boyd v. Edwards*, (June 3, 1982), Cuyahoga App. No. 43954, 1982 WL 2372, citing Annotation, 148 A.L.R. 1140.

{¶ 15} At the competency hearing in the trial court, Braun accurately described the general nature of court proceedings, of her role as a witness, and of the charges against her mother. She described what it means to be under oath as "swearing before God that you're telling the truth." She stated that she knew the difference between right and wrong and was "not stupid."

{¶ 16} Braun also described the basis for the probate court's finding of incompetency three years earlier. She testified that she had gone through a "very nasty divorce" before the guardian was appointed, that she had been diagnosed with bipolar disorder, depression, and posttraumatic stress disorder at that time, and that she had tried to commit suicide. She also stated that after this criminal case was "dropped," her doctor was going to recommend that the guardianship be terminated because it was no longer needed. She informed the court that she had testified in other legal proceedings in the past and had never been found incompetent to testify.

{¶ 17} Marshall cites *State v. Hanselman* (Aug. 12, 1985), Brown App. No. CA84–11–016, 1985 WL 7705, for the proposition that a victim-witness's mental incapacity shifts the burden to the state to show that the witness is competent to testify. The victim-witness in *Hanselman* was " 'moderately' mentally retarded," although the opinion does not suggest that she had been found incompetent in the probate court. Further, *Hanselman* relies on *State v. Braden* (1936), 56 Ohio App. 19, 9 O.O. 200, 9 N.E.2d 999, which held that when a "witness whose competency is questioned *is under commitment for insanity,* the burden of proof rests upon the state to show the competency of such witness." (Emphasis added.) Id. at 24, citing *State v. Brown* (1918), 28 Ohio Dec. 213. *Brown* similarly limited this burden-shifting to a witness who was then an inmate of a hospital for the insane. Judge Nippert wrote a very scholarly and historical opinion that also concluded that when the witness had been released from a hospital for the insane, the burden rested upon the accused to show that witness was incompetent. *Brown.* Moreover, since *Hanselman* was decided, the Supreme Court has stated its view that a witness of unsound mind is not automatically incompetent to testify. *Bradley,* 42 Ohio St.3d at 140, 538 N.E.2d 373. Thus, *Hanselman* is not persuasive.

{¶ 18} In finding Braun competent to testify, the trial court stated: "Considering the testimony elicited at the hearing from the State's witness, Chrystal G. Braun, the Court finds that she exhibited a clear understanding of court

proceedings; that she fully understood the difference between telling the truth and telling a lie; that she understood the taking of an oath, and its importance; and that she had never been found to be incompetent to testify in any previous court proceeding."

{¶ 19} The trial court had ample evidence from which to conclude that Braun was competent to testify, and it did not abuse its discretion in doing so.

{¶ 20} The first assignment of error is overruled.

### III

{¶ 21} Marshall's second assignment of error states:

{¶ 22} "Appellant was deprived of her right to the effective assistance of counsel because counsel: (1) failed to object to a line of questioning by the state that amounted to the prosecutor asking two police officers their opinion of the alleged victim's veracity; (2) Did not offer any argument or case law to the trial court with regard to the burden of proof in a competency hearing; and (3) failed to request or renew a motion for acquittal."

{¶ 23} Marshall claims that her trial counsel was ineffective for several reasons.

{¶ 24} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook* (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.

{¶ 25} Marshall contends that "the ultimate question in this case was whether Braun fabricated the assault in retaliation against Mrs. Marshall for attempting to control the amount of cigarettes Braun was allowed to smoke." Based on this characterization, she claims that two police officers' opinions as to whether Braun "appear[ed] to be vindictive" when she reported the crime improperly commented on Braun's veracity and credibility and infringed upon the fact-finder's role in the trial.

{¶ 26} The Supreme Court of Ohio has held that an expert witness may not testify as to the expert's opinion of the veracity of a child declarant. *State v.*

*Boston* (1989), 46 Ohio St.3d 108, 128–129, 545 N.E.2d 1220. More generally, an expert may not provide opinion testimony regarding the truth of a witness's statements or testimony. *State v. Stowers* (1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881. This court has stated that this rule applies to a police officer who investigates a crime as well as to an expert witness. *State v. Tobin,* Greene App. No. 2005 CA 150, 2007-Ohio-1345, 2007 WL 867624, ¶ 24; *State v. Adrian,* 168 Ohio App.3d 300, 2006-Ohio-4143, 859 N.E.2d 1007.

{¶ 27} The testimony at trial to which Marshall objects came from two witnesses, Edward Skinner of the Centerville Police Department and Joseph Grieshop of the Dayton Police Department.[2] At trial, Skinner was asked about his "observations" of Braun when he was at Castle. He testified that she had bruises on her face and right arm. The state then asked what Braun's demeanor had been. Skinner responded:

{¶ 28} A: "She was upset. She was sorta crying off and on. Whenever she would start to talk a little bit she would start to cry.

{¶ 29} Q: "Was she concerned about what was gonna happen?

{¶ 30} A: "She was * * * concerned about the * * * ramifications as far as what she was saying about her mother, and yes she was concerned about the things that would take place at home.

{¶ 31} Q: "And did she appear to be vindictive to you?

{¶ 32} A: "No.

{¶ 33} Q: "How would you describe her?

{¶ 34} A: "Sort of timid, shy. She was almost hesitant to give details. * * * [E]asily would start to cry and tear up."

{¶ 35} Grieshop talked with Braun later the same day. After identifying the pictures of Braun's injuries that were taken the day of their meeting, he testified about their conversation as follows:

{¶ 36} Q: "What was [Braun's] demeanor when she described what had occurred here?

{¶ 37} A: "Like I said she was emotionally upset. She wasn't outright crying, but she was tearful. She had a tissue the whole time, and you know, she had visible tears coming down her face.

{¶ 38} Q: "Did she seem reluctant to share with you?

---

2. When Braun reported the crime, she was at Castle in Centerville, and Skinner responded to the dispatch. Upon talking with Braun, Skinner realized that the alleged incident had occurred in Dayton; the dispatcher then contacted the Dayton Police Department, and Grieshop responded to Castle.

{¶ 39} A: "Yes she was. She did say she wanted to make sure she was doing the right thing and she wasn't sure that she should be doing this and she was afraid that she was gonna maybe get in trouble or have more harm done to her.

{¶ 40} Q: "Did she appear vindictive in anyway to you?

{¶ 41} A: "No. No."

{¶ 42} Grieshop then described what actions he took in response to Braun's allegations.

{¶ 43} In our view, the prosecutor's questions did not evoke an opinion as to the witness's veracity. The officers' testimony that they did not perceive Braun as vindictive was their opinion about her demeanor and state of mind when she reported the alleged offense and not a comment on whether her statements were truthful. Thus, their opinion testimony was controlled by Evid.R. 701, which provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." A trial court has considerable discretion in admitting the opinion testimony of lay witnesses, *State v. Kehoe* (1999), 133 Ohio App.3d 591, 603, 729 N.E.2d 431. In this case, the trial court did not abuse its discretion in allowing the officers' testimony.

{¶ 44} Marshall also argues that the officers' testimony on the "ultimate issue" presented in the case is demonstrated by the trial court's finding that Braun had not been "vindictive" and by the court's acknowledgment on the record that the credibility of the witnesses was "critical" in this case. The state claims that the officers' testimony that the victim did not appear vindictive was not critical to the case because the trial judge, who was the finder of fact, had ample opportunity to assess the victim's veracity himself at the competency hearing and at trial.

{¶ 45} Notwithstanding the trial court's statements that the credibility of the witnesses was "critical" to its factual determinations and that Braun was "not a vindictive person," the only testimony on which the trial court expressly relied in reaching its conclusions was the testimony of Braun, her mother, and her step-father. In addition to its finding that Braun was "not a vindictive person," the trial court observed that the physical evidence—Braun's injuries—was inconsistent with Marshall's and the step-father's testimony that they had merely restrained the victim. The court concluded that the physical marks documented by the police officers "depict some kind of striking," not restraint. The trial court did not expressly rely on the police officers' assessments of whether Braun was acting vindictively in pursuing this case and, in the absence of evidence to the contrary, we presume that the trial court independently assessed the evidence

presented. Moreover, the trial court relied on specific factual findings unrelated to the officers' testimony in convicting Marshall of domestic violence and assault. Therefore, we cannot conclude that the officers' testimony about Braun's demeanor had any effect on the outcome of the case. We are unpersuaded that counsel acted ineffectively or that an objection during this testimony would have affected the outcome of the trial.

{¶ 46} Marshall also contends that her counsel was ineffective because he did not adequately challenge Braun's competency to testify. Specifically, she claims that counsel failed to present evidence about the extent of Braun's mental disability, did not obtain a copy of her probate-court testimony for use during cross-examination, did not call an expert to testify about her medical condition and ability to testify, and did not point out that the state had the burden of proof.

{¶ 47} As we discussed under the first assignment of error, the assessment of a lay witness's competence to testify turns on whether the witness can accurately perceive facts and transactions and recount them truthfully. These determinations are not so technical or complex as to require expert testimony about the witness's mental state. Moreover, a trial court is experienced in assessing the credibility of witnesses. Counsel was not ineffective in failing to present expert testimony about Braun's mental-health condition or her ability to testify truthfully.

{¶ 48} Marshall's argument that trial counsel was ineffective in failing to introduce additional medical evidence and the transcript of the probate-court proceedings relies on matters outside the record; we cannot review matters outside the record on direct appeal. She also does not advance any specific argument as to how this evidence would have bolstered her position that Braun was not competent to testify. Thus, we are unpersuaded by Marshall's argument that counsel acted ineffectively in failing to present more detailed evidence about Braun's mental state and that but for this ineffectiveness, the outcome of the trial would have been different.

{¶ 49} Absent evidence to the contrary, we assume that the trial court knew and applied the appropriate burden of proof, notwithstanding trial counsel's failure to present evidence about it.

{¶ 50} Finally, Marshall contends that her trial counsel was ineffective for failing to make a Crim.R. 29 motion for acquittal. Such a motion is appropriate "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). Marshall claims that because three witnesses testified that "Braun's allegations must have been fabricated," acquittal was appropriate.

{¶ 51} Although a Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence, Marshall essentially argues that her conviction was against the

manifest weight of the evidence. The bases for challenging a conviction due to the sufficiency of the evidence and the weight of the evidence are distinct, and the filing of a Crim.R. 29 motion would not have advanced Marshall's argument that her conviction was against the manifest weight of the evidence. However, we will address whether trial counsel was ineffective in failing to raise either argument.

{¶ 52} A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 53} In contrast, when reviewing a judgment under a manifest-weight standard of review, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 54} Braun testified that she and Marshall got into an argument about Braun's smoking. Marshall tried to "cut [Braun] down" from one pack of cigarettes per day to four cigarettes per day, notwithstanding that Braun contributed over $600 to the household income each month, plus $152 in food stamps, which was supposed to cover her food and cigarettes. The disagreement "became physical" when Marshall grabbed Braun's right arm, "smacked" her across the face, and "blacked [her] eye and blacked [her] cheek." Braun testified that Marshall hit her twice while Marshall restrained her by the arm.

{¶ 55} Braun also testified that she had experienced "pseudo seizures that happen very rarely," but that she had not had one in the year preceding the altercation and did not have one at or around the time of her injuries. Braun

admitted, however, that when she first visited Castle three days after the assault and was questioned about her injuries, she claimed that she had sustained the injuries during a seizure. The next day, when people at Castle again asked her about her injuries, she reported the assault. Braun was bruised on her eye, cheek, and arm, as demonstrated by pictures presented in court.

{¶ 56} Marshall and Braun's stepfather testified that there had been no physical violence on the Saturday in question (June 21), but that Braun had had a seizure the next day, Sunday, during which one or both of them had restrained her to prevent injury. The stepfather also testified that Braun was willing to cut back on her smoking for health issues and that this was not a point of contention in the family. They did not seek medical treatment for Braun following the seizure because they believed that it was unnecessary.

{¶ 57} A friend of Marshall's testified that she had seen Braun the Monday following the alleged assault or seizure and had not seen any bruises on her body.

{¶ 58} Braun's testimony, if believed, established the essential elements of domestic violence and assault and was sufficient to support Marshall's conviction. Trial counsel was not ineffective in failing to request an acquittal, as the evidence clearly did not support such a motion.

{¶ 59} In weighing the evidence, the court concluded that Braun was "timid" and not vindictive and that the stepfather's claim that there had never been physical altercations between mother and daughter was "hard to believe." The court commented that the photos of Braun "absolutely show injury" and that if the parents had restrained her, as they claimed, Braun should not have been injured. The court concluded that the photos demonstrated "striking," not "holding." These conclusions were reasonable interpretations of the evidence presented, and we are unpersuaded that the trial court clearly lost its way and created a manifest miscarriage of justice in crediting Braun's testimony rather than that of the other witnesses.

{¶ 60} Because Braun's arguments about the sufficiency and weight of the evidence are without merit, trial counsel was not ineffective in failing to raise them.

{¶ 61} The second assignment of error is overruled.

IV

{¶ 62} The judgment of the trial court will be affirmed.

Judgment affirmed.

DONOVAN, P.J., and BROGAN, J., concur.