[Cite as *State v. Gray*, 2022-Ohio-2171.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29320 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-2958 |
| | : | |
| DIONDRA GRAY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of June, 2022.

. . . . . . . . . . .

ALISSA C. SCHRINER, Atty. Reg. No. 0089388, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 202 North Limestone Street, Suite 250, Springfield, Ohio 45503
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Appellant Diondra Gray appeals from a judgment of the Dayton Municipal Court, which, after a bench trial, found her guilty of two counts of menacing, fourth-degree misdemeanors. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.        Facts and Procedural History

{¶ 2} The State's evidence at trial established the following facts. For a short time leading up to August 22, 2021, Gray's 10-year-old son, D.W. had been staying with Gray's aunt, Cynthia, Cynthia's 68-year-old husband, Charles, and their 12-year-old son, R.W. Testimony indicated that, because school was to start the following day, Cynthia contacted Gray in an effort to get her to bring over school clothes for D.W. When Gray did not respond in a manner that satisfied her, Cynthia sent a text that stated, "If you can't follow simple instructions, you need to come and get your son." Trial Tr. at 9. The two women then argued on the phone and Gray threatened to assault Cynthia. Cynthia testified that Gray began calling her names and "said she was coming to whoop my a**. She was tired of sh-, excuse my language, sh*t. * * * Get my mother fu***** son ready." Trial Tr. at 10.

{¶ 3}  Soon after, Gray arrived at Cynthia's house in a truck driven by another woman and demanded that Cynthia bring D.W. out to her. Cynthia testified that she told D.W. to stay inside because Gray was out of control. When Cynthia did not send D.W. to the truck to leave with his mother, Gray made more threats against Cynthia and her family. Eventually, D.W. did leave with Gray, but the drama did not end there. Gray went live on Facebook and, according to multiple witnesses, threatened to "shoot up" the house, kill Robert, and "whoop" Cynthia.

{¶ 4} After the Facebook threats, the police were called, and Cynthia showed officers the video. A few days later, Gray was charged with two counts of aggravated menacing, first-degree misdemeanors, and two counts of menacing, fourth-degree misdemeanors. The case proceeded to a bench trial on November 15, 2021, where both parties presented three witnesses but no exhibits. After the trial court denied her Crim.R. 29 motion, Gray was found guilty of the menacing charges but not guilty of the aggravated menacing charges. The trial court sentenced her to concurrent 30-day jail terms (suspended) on each count and one year of community control. Gray has appealed and raises a single assignment of error.

## II.    Gray's conviction was supported by the evidence

{¶ 5}   In her assignment of error, Gray argues that the trial court erred by "denying her motion for acquittal pursuant to Ohio Criminal Rule 29" because the "evidence was insufficient to sustain a conviction" and was "not supported by the *weight* of the evidence." (Emphasis sic.) Appellant's Brief at 4.

{¶ 6} Sufficiency is a "term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is sufficient to sustain a verdict is a question of law. *Id.*

{¶ 7} It is our function, when reviewing the sufficiency of the evidence, to "examine the evidence admitted at trial to determine whether such evidence, if believed, would

convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.). The relevant inquiry is whether, viewing the evidence in the light most favorable to the State, any reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 8} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 9} The trier of fact sees and hears the witnesses, and because of that, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of the witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). A conviction should only be reversed as being against the manifest weight of the evidence in exceptional circumstances. *Martin* at 175.

{¶ 10} Even though sufficiency and manifest weight are separate legal concepts,

manifest weight can subsume sufficiency in conducting the analysis; a finding that a conviction is not against the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Freeman*, 2d Dist. Greene No. 2020-CA-33, 2021-Ohio-734, ¶ 39.

{¶ 11} Gray was convicted of menacing, in violation of R.C. 2903.22(A). That statute states that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.22(A). The major issues when a threat is made are whether the defendant (1) acted knowingly and (2) caused a person or group to believe they would be harmed. *In re P.T.*, 2013-Ohio-3881, 995 N.E.2d 279, ¶ 16 (12th Dist.).

{¶ 12} Cynthia testified that Gray repeatedly threatened to beat her up, that she threatened to "shoot up" her house, and that she even threatened Charles. Trial Tr. at 11. Similarly, Charles told the court that he observed Gray on Facebook Live "talking about shooting up everything at our house, shooting me, and putting me on my wife's father's grave." Trial Tr. at 29. He also testified that Gray was "cussing, talking about [how] she [was] going to beat up * * * my wife." Trial Tr. at 32-32. Cynthia's and Charles' son, R.W., also testified that Gray told him over the phone that she was going to beat up his mom and that he saw on Facebook Live that Gray said she would kill his dad and shoot up the house. Trial Tr. at 56.

{¶ 13} In addition to confirming the threats, all three testified that they took them seriously. This is perhaps best illustrated by the following exchange between Cynthia and the trial court.

Court:        So, what were you concerned [about]?

Cynthia:      The concern is, you are threatening me. So, you are talking about doing something to my husband and child. That's a problem.

Court:        So, were you concerned for their safety?

Cynthia:      Yes, ma'am.

Court:        And the question is, why?

Cynthia:      Why? Because of the threats.

Court:        What [were] the threats?

Cynthia:      She said she was coming over there to shoot up my house.

Court:        Any other threats?

Cynthia:      She said she was coming to knock my sixty-eight-year-old husband down and smack my son.

Trial Tr. at 24-25. Cynthia also stated that she was concerned because she believed Gray could follow through with the threats. Trial Tr. at 14, 23-24, 26. In addition, Charles told the court that he was concerned enough about the statements that he felt the need to call the police, and R.W. stated that his mom "felt like Diondra [Gray] was a danger and she fully believed that Diondra would shoot her house." Trial Tr. at 51, 69.

{¶ 14} Gray's witnesses emphasized that both women were equal participants. Tasheka Moreland testified that she drove Gray to Cynthia's house to pick up D.W., and when she arrived, Cynthia was on the porch with D.W. Moreland confirmed that the women were yelling and arguing with each other and explained that she had heard both women make threats. According to Moreland's testimony, after D.W. finally made it out to

the vehicle, they drove back to her house without further incident.

{¶ 15} D.W. testified that Cynthia was upset that Gray would not bring clothes for him, but the real arguments started when Gray arrived to pick him up. He told the court that the women were yelling at each other before he got in the truck, and then he admitted that his mom threatened to "whoop [Cynthia's] 'A' word, but she didn't say that she would shoot her or anything." Trial Tr. at 91.

{¶ 16} Gray testified that she tried to explain to her aunt that she could not go back to her house to get clothes for her son because of a protection order, but when Cynthia called her a "disrespectful little b*tch," things escalated. Trial Tr. at 97. According to Gray, both she and Cynthia threatened each other over the phone and when she arrived, Cynthia was on the porch posturing aggressively. Gray testified that her son was on the porch and wanted to leave with her, but her aunt would not let him. She told the court, "I said you need to let my f*cking son walk off that porch because if I have to get out this truck, it's not going to be pretty. That's when she let him walk down." Trial Tr. at 103.

{¶ 17} After they left Cynthia's house, Gray testified that she went back to her friend's house where she learned that Cynthia had made a Facebook video regarding her. That prompted Gray to make one of her own, and although she testified that she never threatened to shoot anyone or anything, she did admit that she threatened Cynthia; "I said, I would wear your old a** out." Trial Tr. at 107.

{¶ 18} Based on the State's evidence, a reasonable factfinder could have concluded that Gray knowingly caused Cynthia, Charles, and R.W. to believe that she would cause physical harm to them and to their home. Gray's conviction was supported

by sufficient evidence. Moreover, after considering all the evidence presented at trial, we cannot conclude that the trial court lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. The verdict was not against the manifest weight of the evidence. The assignment of error is overruled.

### III.    Conclusion

{¶ 19} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and DONOVAN, J., concur.

Copies sent to:

Alissa C. Schriner
Stephanie L. Cook
Andrew D. Sexton
Samantha L. Berkhofer
Hon. Deirdre E. Logan