[Cite as *State v. Harvey*, 2022-Ohio-2424.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29307 |
| | : | |
| v. | : | Trial Court Case Nos. 20CRB594-A |
| | : | 20CRB594-B |
| MICHAELA C. HARVEY | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of July, 2022.

. . . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. No. 0050559, Assistant Prosecuting Attorney, City of Miamisburg Prosecutor's Office, 10 North First Street, Miamisburg, Ohio 45342
        Attorney for Plaintiff-Appellee

TRAVIS L. KANE, Atty. Reg. No. 0088191, 130 West Second Street, Suite 460, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Michaela C. Harvey appeals from her conviction after she was found guilty of two counts of child endangering, both first-degree misdemeanors, in violation of R.C. 2919.22(A). For the reasons that follow, the judgment of the trial court will be reversed.

## I.   Facts and Procedural History

{¶ 2} On May 3, 2020, Erin Harvey ("Erin") received a series of phone calls from her daughter, Michaela Harvey ("Harvey") in various stages of distress. According to trial testimony, each call became more concerning and intense as Harvey's mental state degraded. Harvey told her mother that "she was going to throw the kids out the window and at some point, threatened * * * to kill herself." Trial Tr. at 14. Harvey's 11-month-old twins could be heard crying in the background. As a result of the distressing phone calls, Erin contacted the Miamisburg police, who later that morning went to Harvey's apartment to check on her well-being. No one answered the door; the officers entered the unlocked residence and found that the unit was "dirty and in disarray."

{¶ 3} Erin testified that after the phone calls, Harvey brought the children over to her house in Wilmington and that Harvey was "very, very upset, screaming and hysterical." Trial Tr. at 16. Harvey eventually left the children with her mother for several hours but returned around 10 p.m. to retrieve the twins. Erin stated that she allowed her daughter to take the children at that time because Harvey had adequately calmed down and because she did not believe she could legally withhold the children from their mother.

{¶ 4} The following day, Detective Sergeant Jeff Muncy was reviewing the weekend cases, and after coming across Harvey's, he "was concerned that no one had

actually laid eyes on the kids, so it was [his] goal * * * to make sure they were, in fact, okay." Trial Tr. at 44. Sgt. Muncy, accompanied by a caseworker from children services, went to Harvey's apartment on May 4, and this time she and her children were present. Sgt. Muncy testified that once inside, he found the apartment in "disarray," with diapers and clothing on the floor. He stated that the debris was particularly troubling because the children were crawling all over the floor. He also noted that there were dirty dishes in the kitchen that were "dried and cruddy" and a bong (a marijuana smoking device) was on the kitchen counter.

{¶ 5} While in the apartment, Sgt. Muncy engaged in conversation with Harvey. According to Sgt. Muncy's testimony, Harvey admitted that she had threatened to kill herself, but would only admit that she "said some not so nice things about the kids." Trial Tr. at 55. She also told Sgt. Muncy that she "had a license to smoke marijuana and she uses it to * * * self-medicate because her kids stress her out." Trial Tr. at 50.

{¶ 6} Based on the conditions in the apartment and Harvey's statements, children services made the decision to remove the children and place them with their grandmother, Erin. On May 6, 2020, Harvey was charged with two counts of endangering children related to the incidents on May 3-4. The matter proceeded to a bench trial, which was held on July 9, 2020. The trial court heard testimony from Harvey, Erin, Sgt. Muncy, and other Miamisburg officers involved in the investigations, and it considered pictures taken in the apartment showing the conditions inside. The court took the case under advisement and issued a guilty verdict on both counts on September 18, 2020. Harvey was sentenced to 180 days in jail with 174 days suspended and four years of probation. Anger

management classes, parenting classes, and random drug tests were also ordered.

{¶ 7} Harvey has appealed, raising one assignment of error.

## II. Manifest Weight and Sufficiency of the Evidence

{¶ 8} In her sole assignment of error, Harvey argues that her convictions must be reversed because they were against the manifest weight of the evidence. However, as the State points out, Harvey makes both manifest weight and sufficiency of the evidence arguments. We will analyze accordingly.

{¶ 9} Sufficiency is a "term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is sufficient to sustain a verdict is a question of law. *Id.*

{¶ 10} It is our function, when reviewing the sufficiency of the evidence, to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.). The relevant inquiry is whether, viewing the evidence in the light most favorable to the State, any reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 11} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No.

22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 12} Even though sufficiency and manifest weight are separate legal concepts, manifest weight can subsume sufficiency in conducting the analysis; finding that a conviction is not against the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Freeman*, 2d Dist. Greene No. 2020-CA-33, 2021-Ohio-734, ¶ 39.

{¶ 13} As to sufficiency, Harvey was charged and convicted of endangering children, a violation of R.C. 2919.22(A), which states, in relevant part, that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." "Substantial risk" is defined as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 14} According to the Ohio Supreme Court, "[t]he existence of the culpable mental state of recklessness is an essential element of the crime of endangering children * * *." *State v. McGee,* 79 Ohio St.3d 193, 650 N.E.2d 975 (1997), syllabus. "A person

acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). A person is reckless with respect to circumstances when, with indifference to the consequences, he or she disregards an unjustifiable and substantial risk that such circumstances are likely to exist. *Id.*

{¶ 15} Based on the evidence presented at trial, we conclude that the elements of endangering children were not met. Much of the trial testimony revolved around the living conditions of Harvey's apartment, which were described by Officer Russell Green and Sgt. Muncy as "dirty and in disarray." Sgt. Muncy told the trial court that there were diapers and clothing on the floor and that he observed dirty dishes that were "dried and cruddy" in the kitchen. And while Harvey admitted that she "always need[s] to clean," the photographs taken of the apartment were in no way shocking. Instead of depicting a house in "disarray," the photographs showed clutter in various rooms – clothes needing to be picked up, bathroom counters needing to be de-cluttered, and dishes needing to be washed – but it could not be said that the living conditions created a substantial risk to the health or safety of the children as required by R.C. 2919.22(A).

{¶ 16} In its decision and entry, the trial court placed a great deal of emphasis on Harvey's admission that she smoked marijuana and on the bong found on the kitchen counter, seemingly linking her marijuana use with her mental health issues. There is, however, a problem with that conclusion: there was no causal link made at trial between Harvey's marijuana use and her suicidal thoughts. The closest thing to a nexus between

the two was Sgt. Muncy's testimony that Harvey told him she smoked to deal with stress, and that was wholly insufficient. The presence of the bong was also of concern to the State and the trial court, but its location on the kitchen counter militates against its creating a substantial risk to the children because Harvey's twins were only 11 months old at the time of incident and could only crawl. There would have been no way for them to get to the bong. Further, there was no testimony that Harvey smoked to impairment or that she smoked in the presence of her children. In fact, the opposite was the case: Harvey testified that she never used marijuana with the twins present. Additionally, the trial court seemed to imply that Harvey endangered her children by using marijuana while breastfeeding, and while transmitting THC to the children through breastmilk was a potential danger, there was no evidence presented that that had occurred.

{¶ 17} Finally, the State urges us to consider Harvey's threats of self-harm and purported threats against her children as creating a substantial risk of harm to the health and safety of children. However, there was no evidence that Harvey acted upon her statements or otherwise engaged in conduct that threatened her children.

{¶ 18} Based on the record before us and viewing the evidence in the light most favorable to the State, we cannot say that the elements of endangering children were proven beyond a reasonable doubt. Harvey's conviction was based on insufficient evidence. Her assignment of error is sustained.

### III.    Conclusion

{¶ 19} Harvey's conviction was not supported by the evidence, and the trial court's judgment of conviction will be vacated.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.


Copies sent to:

Christine L. Burk
Travis L. Kane
Miamisburg Municipal Court