[Cite as *State v. Armstrong-Carter*, 2023-Ohio-3392.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29737 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01229 |
| | : | |
| JEWELL ANTOINE ARMSTRONG-CARTER | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 22, 2023

. . . . . . . . . . .

ROBERT ALAN BRENNER, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Jewell Antoine Armstrong-Carter appeals from his conviction in the Montgomery County Court of Common Pleas after he was found guilty of failure to comply with an order or signal of a police officer and having weapons while under disability. The trial court sentenced him to an aggregate prison term of 48 months and imposed a 10-year driver's license suspension. For the reasons that follow, the

judgment of the trial court will be affirmed.

## I.      Facts and Procedural History

{¶ 2} On March 17, 2022, Sgt. Chris Colbert of the Ohio State Highway Patrol was working the I-75 corridor north of Dayton when he observed a silver Pontiac with dark-tinted windows traveling "unusually slow" on southbound I-75. Sgt. Colbert testified that the car was traveling 45-50 mph in a 55-mph zone and that the normal speed in that area was 65-70 mph. Finding it suspicious, the trooper ran the vehicle's tags/plates and discovered that the tags had been expired since March 2021 and that the car was registered to a deceased female.

{¶ 3} Sgt. Colbert positioned his cruiser behind the Pontiac and observed two occupants. He told the court that the driver, later identified as Armstrong-Carter, was reaching around the vehicle, "clearly moving from his side over to the passenger side. * * * You could clearly see his body moving to the passenger side, which gave me concern." At that point, Sgt. Colbert activated his lights, and then a short time later, his sirens. He observed that the driver was "[d]eep in the passenger side of [the] vehicle." The car then accelerated to over 100 mph and began weaving through traffic, almost hitting several vehicles.

{¶ 4} After traveling southbound on I-75, the Pontiac exited the interstate and merged onto U.S. Route 35 west, then left the highways all together and continued driving at a high rate of speed on James H. McGee Boulevard, Home Avenue, and then into a residential neighborhood around Third Street and Kilmer Street. Once in the neighborhood, Sgt. Colbert aborted the chase due to safety concerns; he did, however,

continue to follow the car without the lights and sirens.

{¶ 5} The silver Pontiac continued at a high rate of speed through the neighborhood until Armstrong-Carter lost control and smashed into several parked cars on Kilmer Street. The collision caused heavy damage to the Pontiac and the cars it hit. After the Pontiac came to a stop on a perpendicular street, both Armstrong-Carter and the passenger fled on foot.

{¶ 6} With minimal delay, Dayton officers arrived on scene and set up a perimeter. Detective Jack Miniard observed Armstrong-Carter peaking around the corner of a house and a foot chase ensued. Armstrong-Carter was quickly apprehended and arrested. A search incident to his arrest located, among other things, the keys to a vehicle. Officers also searched the silver Pontiac and located a loaded nine-millimeter Smith & Wesson handgun in the glovebox. The gun was test-fired and confirmed to be operational. Further investigation determined it was stolen.

{¶ 7} On June 3, 2022, Armstrong-Carter was indicted on one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B) and R.C. 2921.331(C)(5) and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3). The case proceeded to a bench trial and the court found Armstrong-Carter guilty as charged. He was sentenced to an aggregate prison term of 48 months and had his driver license suspended for ten years.

{¶ 8} Armstrong-Carter has filed a timely appeal with two assignments of error.

## II.     Sufficiency of the Evidence

{¶ 9} In his first assignment of error, Armstrong-Carter asserts that his conviction

for having weapons while under disability was not based on sufficient evidence. He does not challenge his failure to comply conviction.

{¶ 10} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is essentially a test of adequacy; whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 12} R.C. 2923.13(A)(3) states that unless a person is relieved from disability under operation of law or legal process, he or she shall not knowingly acquire, have, carry, or use any firearm or dangerous ordinance if he or she had been previously convicted of a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. Armstrong-Carter does not challenge the fact that he had a previous felony drug conviction; he had been previously convicted for trafficking in heroin in Montgomery C.P. No. 2016-CR-1256. Instead, he focuses his argument on

whether he **had** the firearm that was found in the silver Pontiac. Specifically, Armstrong-Carter argues that "[n]obdy testified that [he] put the gun into the glove box or even knew it was there. There was no DNA or fingerprint evidence connecting [Armstrong-]Carter to the firearm in the glove box." Appellant's Brief at 4. He is correct that there was no direct evidence linking him to the Smith & Wesson, but there did not need to be.

{¶ 13} Whether a defendant exercised dominion and control over contraband can be indirectly proven, through circumstantial evidence, even if he or she was not present when the contraband was found. *State v. Ballard*, 2d Dist. Montgomery No. 11764, 1991 WL 355150, *4 (Aug. 15, 1991). This concept is known as constructive possession. "A person has constructive possession of an object when he or she is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within his or her immediate physical possession." *State v. Keister*, 2d Dist. Montgomery No. 29081, 2022-Ohio-856, ¶ 44. It is not a requirement that ownership be established. *Id*., citing *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33.

{¶ 14} Courts may consider all the facts and circumstances surrounding the scene to determine whether an individual possessed the item. *Id*. at ¶ 45. Circumstantial evidence and direct evidence have equal probative value. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at syllabus. In this case, the evidence presented at trial indicated that Armstrong-Carter had had constructive possession of the gun.

{¶ 15} First, Sgt. Colbert testified that during the pursuit on the highway, Armstrong-Carter began to make furtive movements in which he reached over to the passenger side of the vehicle. He told the court that Armstrong-Carter was "clearly moving

from his side over to the passenger side." Sgt. Colbert further testified that "you could clearly see his body moving to the passenger side." It was reasonable to infer that Armstrong-Carter's movements, reaching "deep in the passenger side of the vehicle," were to conceal contraband in the glove compartment or retrieve it from there.

{¶ 16} Further, trial evidence (specifically State's Exhibit 1, a home surveillance video) depicted Armstrong-Carter emerging from the driver's side of the just-wrecked vehicle and running off screen. A few moments later he re-emerged into the view of the camera and approached the passenger side door of the car before seeing Sgt. Colbert arrive. Upon noticing the cruiser, Armstrong-Carter can be seen turning around and running off a second time. This, too, supported the inference that there was something important to Armstong-Carter on the passenger side of the car.

{¶ 17} When viewed in the light most favorable to the State, the evidence presented at trial was sufficient to lead a reasonable fact finder to believe, beyond a reasonable doubt, that Armstrong-Carter knowingly had possession of a firearm while under disability for a previous drug-related felony conviction. His conviction for having weapons while under disability was based on sufficient evidence and the assignment of error will be overruled.

### III. Driver's License Suspension

{¶ 18} In his second assignment of error, Armstrong-Carter contends that the trial court erred in the length of the driver's license suspension imposed. According to the transcript, the trial court imposed a license suspension of two years – a term not authorized by law. *See* R.C. 2921.331(E); R.C. 4510.02(A)(2) (imposing a driver's license

suspension of three years to life for convictions of failure to comply with the order or signal of a police officer). If that part of the transcript is accurate, the sentence would be contrary to law. It appears, however, that there was a mistake – a scrivener's error - in the transcription.

{¶ 19} After the filing of Armstrong-Carter's brief, but before the State filed its brief, the parties submitted a joint stipulation to correct the record pursuant to App.R. 9(E). Upon review of the recording of Armstrong-Carter's sentencing hearing, both the State and Armstrong-Carter agree that the trial court stated, "I am going to suspend your right to operate a motor vehicle in the State of Ohio for a period of ten years." This is in contrast with the written transcript which reports that the court imposed a two-year suspension.

{¶ 20} We accepted the parties' stipulation, and considering that, Armstrong-Carter's second assignment of error has no merit as the trial court imposed a proper driver's license suspension. The second assignment of error is overruled.

## IV. Conclusion

{¶ 21} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.