[Cite as *State v. Morales-Gutierrez*, 2023-Ohio-3817.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29681 |
| | : | |
| v. | : | Trial Court Case No. 22-CRB-3977 |
| | : | |
| JAIRO MORALES-GUTIERREZ | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 20, 2023

. . . . . . . . . . .

ROBERT L. SCOTT, Attorney for Appellant

ALISSA C. SCHRINER, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Jairo Morales-Gutierrez appeals from his conviction for domestic violence. For the reasons stated below, we affirm.

**I. Factual and Procedural History**

{¶ 2} On November 12, 2022, Dayton police officers were dispatched to a

residence on Findlay Street on a report of an assault. Upon arriving at the home, the officers were met at the door by Marco Sandoval Ponce. Ponce led the officers upstairs to a room. The door to the room was shut, but the officers could hear people in the room speaking to each other. The officers announced their presence and asked the people inside to open the door; at that point, they heard someone say something to the effect of there was "nothing to see here." One of the officers then opened the door. The officers observed Diana[1] and Morales-Gutierrez in the room. Diana was on the floor. The officers separated the pair before interviewing them. It was determined that the two were living together, as boyfriend and girlfriend, in the rented room.

{¶ 3} On November 13, 2022, Morales-Gutierrez was charged by criminal complaint with one count of domestic violence in violation of R.C. 2919.25(A) and one count of assault in violation of R.C. 2903.13(A). Following a bench trial, he was found guilty of both charges. At sentencing, the trial court merged the offenses, and the State elected to proceed on the domestic violence conviction. Thereafter, the trial court sentenced Morales-Gutierrez to a jail term of 180 days with credit for 31 days served. The remaining jail time was suspended, and Morales-Gutierrez was placed on one year of supervised probation.

{¶ 4} Morales-Gutierrez appeals.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 5} The sole assignment of error asserted by Morales-Gutierrez is:

---

[1] We will refer to the victim by her first name to protect her privacy.

THE GUILTY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE EVIDENCE PRESENTED WAS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT.

{¶ 6} Morales-Gutierrez contends that his conviction was based upon insufficient evidence and was against the manifest weight of the evidence.

{¶ 7} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 8} However, when an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trial court as the factfinder]

clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 9} Further, "[a]lthough sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2d Dist. Montgomery No. 28950, 2022-Ohio-1421, ¶ 50.

{¶ 10} Importantly, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses, given that the trier of fact sees and hears the witnesses at trial. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Therefore, "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "This court will not substitute its judgment for that of the trier of fac[t] on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign

No. 1997-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 11} Morales-Gutierrez was convicted of domestic violence. Domestic violence is proscribed by R.C. 2919.25(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). The term "physical harm to persons" is defined by R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 12} Morales-Gutierrez's argument rests upon his claims that Diana's testimony was not credible. Specifically, he notes that (1) no one observed the incident; (2) Diana was extremely intoxicated at the time of the alleged incident; (3) the responding officer did not observe any injuries to Diana; and (3) Diana did not tell the officers that she had been kicked by Morales-Gutierrez.

{¶ 13} At trial, Marco Sandoval Ponce testified that he rented a room to Morales-Gutteriez and Diana. He testified that, on the date of the incident, he overheard yelling coming from their room. When he went to the door of their room, he heard Morales-Gutierrez insulting and cursing at Diana. He also heard a sound which he described as

a "smack." Ponce testified he then heard Diana say, "it hurts" and "please don't hit me." Ponce then heard Morales-Gutierrez say, "I will slap you like I do to my ex-wife." Ponce testified that told Morales-Gutierrez to stop or he would call the police. According to Ponce, Morales-Gutierrez opened the door to the room and told Ponce to "stay out of their business." Ponce observed Diana sitting on the floor and crying. Thereafter, Ponce went back downstairs and called 911.

{¶ 14} Diana testified that Morales-Gutierrez became angry at her and began to use "bad words" while accusing her of being with another man. She testified that he became aggressive and slapped her twice on her face, causing her to fall to the floor. She testified that he kicked her in the side of her torso while she was on the floor. She also testified that she experienced pain from the contact. Diana admitted that she was intoxicated at the time of the incident.

{¶ 15} The responding officer testified that Diana informed him that she had been slapped, but he did not recall her saying that she had been kicked. However, he also testified that he had some trouble communicating with her because she was intoxicated and because English was not her primary language.

{¶ 16} The trial court, as the trier of fact, was entitled to "believe all, part or none of the testimony of each witness." (Citations omitted.) *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 42 (2d Dist.). We discern nothing inherently incredible in the testimony provided by Diana and Ponce. Nor do we find anything in the responding officer's testimony that contradicted the events as relayed by Diana and Ponce. On this record, we cannot conclude that the trial court, as the trier of fact, lost its way in crediting Diana's

testimony regarding being slapped and kicked as well as having experienced pain resulting therefrom.[2] Thus, the domestic violence conviction was not against the manifest weight of the evidence, and, as such, the conviction was supported by sufficient evidence.

{¶ 17} Accordingly, the sole assignment of error is overruled.

### III. Conclusion

{¶ 18} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.

---

[2] This court has stated that, although we are "not prepared to hold that any discomfort, however trivial," qualifes as "physical harm," "a pain-inducing blow [such as a punch to the stomach] is sufficient to satisfy the 'physical harm' element of [a]ssault." *State v. Hill*, 2d Dist. Montgomery No. 20678, 2005-Ohio-3701, ¶ 21-22 and 34. Likewise, we conclude that a kick to the side of a person's torso, in the absence of any evidence to contradict the victim's claim of pain induced by that kick, is sufficient to satisfy the physical harm element of domestic violence.